IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LISA JOHNSON                                                                                    PLAINTIFF

v.                                    Civil No. 13-2209

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Lisa Johnson, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.    **Procedural Background:**

Plaintiff filed her application for DIB on June 21, 2011, alleging an onset date of April 1, 2010[1], due pain in her hand when she writes, shoulder pain, lower back pain, depression, and anxiety. Tr. 108-111, 144-145. Her applications were denied initially and on reconsideration. Tr. 56-57. An administrative hearing was held on May 10, 2012. Tr. 30-55. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed the equivalent of a high school education. Tr. 33, 129. She had past relevant work ("PRW") experience as a quality technician and factory worker. Tr. 23, 161-168, 189.

---

[1]Plaintiff initially alleged an onset date of October 2007, but amended this date at the administrative hearing due to the receipt of unemployment benefits. Tr. 35-36.

On June 27, 2012, the ALJ found Plaintiff's depression and anxiety to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 17-18. The ALJ concluded that the Plaintiff could perform a full range of work at all exertional levels with the following nonexertional limitations:

> the claimant can understand, remember, and carry out simple, routine, repetitive tasks; the claimant can respond to usual work situations and ordinary work changes; the claimant can respond to supervision that is simple, direct, and concrete; and the claimant can occasionally interact with co-workers but should not have contact with the general public.

Tr. 19. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as an industrial cleaner, hand packer, and kitchen helper. Tr. 24.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 18, 2013. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

### III.     Discussion:

On appeal, the Plaintiff raises two issues. She contends that the ALJ erred in discounting her subjective complaints and failing to resolve a conflict between the vocational expert's testimony and Dictionary of Occupational Titles ("DOT"). The court has reviewed the briefs filed by the parties, the transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

### A.     Subjective Complaints:

Plaintiff asserts that the ALJ erred in his determination that her subjective complaints are not entirely credible. Specifically, she avers that the ALJ's conclusion that her impairments are amenable to treatment, his failure to credit her assertion that appointments with her psychologist were cancelled by the psychologist, his finding that she did not report drowsiness as a medication side effect, and his determination that her reported activities of daily living contradict her allegations of disability are not supported by substantial evidence. After reviewing the evidence, we disagree.

In assessing the credibility of a claimant, the ALJ is required to examine and apply the following five factors: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; and 5) the functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). A methodical discussion of each factor is not required, as long as the ALJ acknowledges and examines these factors prior to discounting the Plaintiff's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). And, the ALJ's credibility

determination will be entitled to deference if he provides several valid reasons for his finding that the Plaintiff's subjective complaints are not entirely credible. *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

### 1.   Conditions Amenable to Treatment:

In the present case, the ALJ concluded that the Plaintiff's depression and anxiety were responsive to treatment via medication. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (holding if an impairment can be controlled by treatment or medication it cannot be considered disabling). While we do note that she required medication changes and dosage adjustments over the relevant time period, the overall record suggests that the Plaintiff's condition responded very well to the medication regimen prescribed. Tr. 198-208, 294-319. In November 2010, the Plaintiff described Paxil as "a dream come true." Tr. 230-231. In December 2010, she reported no depression and acknowledged that the Klonopin was effective for her panic attacks. Tr. 232-233. In January 2011, Plaintiff disclosed that she was doing well on medication and feeling much better. Tr. 229. And, in March 2011, she proclaimed the ability to function "for the first time in years." Tr. 234-235. In June 2011, the Plaintiff reported significant improvement with the addition of Abilify, stating she was "okay" when she had her medications. Tr. 225-228. Her mood continued to show improvement, and by April 2012, Plaintiff reported that her panic symptoms were well controlled. Tr. 326-327, 330-331. Further, at the administrative hearing, she admitted to "not really having them [panic attacks]." Tr. 41.

AO72A
(Rev. 8/82)

The record does reveal that the Plaintiff was hospitalized for purported suicidal ideations/attempts in May 2011 and April 2012. Tr. 198-208, 294-319. However, on both occasions the Plaintiff discharged the following day with instructions to follow-up with her psychologist. No inpatient treatment was recommended, as we would expect in a case where the Plaintiff attempted suicide and actually posed a risk of danger to herself. Drug screens conducted at the time of both hospitalizations also revealed no evidence of illegal or prescribed medications, in spite of her contention in April 2012 that she ingested 5 Clonazepam. However, her alcohol level was greatly elevated on both occasions. Tr. 201, 300. THE MERCK MANUAL, *Alcohol*, http://www.merckmanuals.com (Last accessed January 13, 2015). And, the Plaintiff did admit to a history of drug and alcohol abuse. Tr. 44. Therefore, it appears to the undersigned that these hospitalizations were related to her alcohol use rather than actual attempts to take her own life.

We also find it significant that Plaintiff's treating mental health team assessed her with global assessment of functioning scores ranging from 50 to 60. A GAF of 50-60 was assessed on only one occasion, with a score of 41 to 50 suggestive of serious impairment while a score of 51 to 60 to indicates only moderate symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). The most common score assessed was a 53. *Id*. And, a review of the RFC determined by the ALJ properly takes Plaintiff's moderate impairments into consideration.

### 2. **Treatment Non-Compliance:**

The Plaintiff also asserts that the ALJ's failure to credit her contention that her psychologist had cancelled several of her appointments constituted error. We disagree. Dr.

Clark Williams was asked to complete a summary and functional assessment to accompany Plaintiff's medical records. Tr. 236. He indicated that the Plaintiff had not been compliant with therapy, having not seen her therapist since January 7, 2011. Accordingly, Dr. Williams did not feel qualified to make a judgment on her progress, given this lapse in treatment. While the record does not contain any information documenting appointment cancellations, it does reveal that the Plaintiff did not see her therapist after March 1, 2011. Tr. 234-235. Given that her master treatment plan called for both medication management and therapy, we can find no error in the ALJ's determination that Plaintiff's failure to follow-up weighed against her credibility. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

### 3.   Medication Side Effects:

Plaintiff next argues that the ALJ did not properly consider the side effects of her medication. The ALJ did find that the Plaintiff "did not assert that her medications caused her excessive drowsiness." Tr. 21. And, to the contrary, the record does reveal that the Plaintiff reported some sedation in April 2012 secondary to the Cymbalta. Tr. 330-331. This appears to have been corrected via medication adjustments, as she testified at the administrative hearing to feeling less sedate with recent adjustments in her medication dosages. Tr. 40. Further, she indicated that the sedation was more isolated to times when she was sitting still and/or inactive. Accordingly, while the ALJ's statement was indeed incorrect, it has resulted in no harm that would necessitate remand.

### 4. <u>**Activities of Daily Living:**</u>

Lastly, the Plaintiff disputes the ALJ's finding that her activities of daily living were inconsistent with her claim of disability. Specifically, the ALJ found that the Plaintiff's ability to attend medical appointments, shop in public stores, go to the library and park with her children, and visit with her daughter via the computer as well as her statement that she was considering going to college contradicted her assertion that she was unable to perform any and all work-related activities. In September 2010, Plaintiff reported that her most common activities included watching television and taking her children to the park or library. Tr. 218-222, 237-241. Although she did not "want" to engage in leisure activities, she made herself do so for her children. Then, in July 2011, Plaintiff completed an adult function report on which she indicated that she could care for her personal hygiene, care for her children with the help of their father, prepare simple meals, clean, do the laundry, ride in a car, shop in stores monthly if someone accompanies her, pay bills, count change, use money orders, watch television, talk to her mother, and attend medical appointments. Tr. 136-143.

The Plaintiff maintains that she can no longer take her children to the park or library due to her impairments, and is unable to shop in stores without the assistance of a trusted person. *See Ply v. Massanari,* 251 F.3d 777, 779 (8th Cir. 2001) (inconsistency in claimant's statements valid reason to discredit subjective complaints). However, as previously discussed, the records suggest that the Plaintiff's anxiety and depression have been responsive to treatment. And, the Plaintiff has reported the ability to perform other activities that call into question her alleged disability. *See Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in

8

AO72A
(Rev. 8/82)

extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends"). As such, we find substantial evidence to support the ALJ's determination that the Plaintiff's activities, at least to some degree, undermine her credibility.

### B. Dictionary of Occupational Titles:

In her second issue, Plaintiff alleges that there is not substantial evidence in the record to support the ALJ's finding that jobs exist in the national economy which she could perform. In particular, she contends that the Dictionary of Occupational Titles ("DOT") descriptions of the jobs identified by the vocational expert are in conflict with certain limitations in the hypothetical. According to the DOT, the jobs identified each require "Level 2" reasoning, defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." U.S. Dep't of Labor, DICTIONARY OF OCCUPATIONAL TITLES, Appendix C (4thed. 1991). Plaintiff claims this is inconsistent with the ALJ's determination that she can understand, remember, and carry out only simple, routine, and repetitive tasks. However, the United States Court of Appeals for the Eighth Circuit concluded that there is no direct conflict between carrying out simple job instructions for simple, routine and repetitive work activity and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). The court also stated that reliance on the DOT as a definitive

9

authority on job requirements is misplaced because DOT definitions are generic job descriptions that offer only the approximate maximum requirements for each position, rather than their complete range. *Id.* (citations omitted). As such, the ALJ's determination will stand.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 16th day of January 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)